## Maginnis v. Maginnis

*Norman L. Goldberg,* for plaintiff.
*Greg Mallon,* for defendant.

WRIGHT, *J.*, February 3, 1988 — Plaintiff, Susan A. Miller Maginnis, filed a complaint in divorce alleging indignities to the person as grounds for divorce. A divorce decree was entered May 14, 1985. When the decree was entered this court retained jurisdiction of alimony, counsel fees and costs, and equitable distribution.

A hearing on alimony, counsel fees and costs, and equitable distribution was held before our divorce hearing officer. At the hearing plaintiff and her attorney appeared. Defendant, John J. Maginnis, did not appear. Notice of the master's recommendations was sent to defendant on August 15, 1986, advising defendant he had until September 5, 1986 to file a demand for a de novo hearing. The notice further provided, "If no written appeal to the court is filed within the time permitted, as above set forth, the court, without further notice to you, shall enter an appropriate final order."

On September 2, 1986, defendant filed a pro se

notice of demand for hearing.[1]

On October 8, 1986, plaintiff filed a motion to quash defendant's demand for hearing. We scheduled a hearing on the motion to quash.

On October 29, 1986 Greg Mallon, Esq., on behalf of defendant filed "defendant's pro tunc petition for leave of court to file exceptions to hearing officer's report". We scheduled the hearing for the same time as plaintiff's motion to quash defendant's demand for hearing.

The hearing was held.[2] At the hearing two witnesses testified. The witnesses were plaintiff and defendant.

Plaintiff testified that defendant had notice of the conference before the divorce hearing officer and also had notice of the hearing scheduled before the divorce hearing officer for May 29, 1986. Plaintiff testified that defendant told her he did not appear at the master's hearing because he was too busy, that defendant received notice of the various proceedings because defendant told plaintiff that he knew they were scheduled, and that defendant said the report of the equitable distribution master was a joke. Plaintiff testified that defendant kept asking her to enter into a settlement with defendant. Plaintiff advised defendant that he would have to talk to her attorney.

Defendant testified that he moved on a couple occasions and some of the notices were not received by him. Defendant testified he thought they could work out the equitable distribution between them-

---

1. Earlier in these proceedings the record reveals that defendant was represented by counsel. He was not represented by counsel at the time of the master's hearing. After he filed his pro se notice his present counsel began to represent him.

2. At the hearing defendant was represented by Greg Mallon, Esq., on both issues before the court.

selves. Defendant testified that plaintiff kept telling him he would have to talk to her attorney about the equitable distribution. Defendant testified that he filed no inventory or other documents indicating that the first document he filed was the notice of demand for hearing.

It is to be noticed that defendant did not deny he was aware of the proceedings before the divorce hearing officer.

Plaintiff was a very credible witness. Defendant's testimony was not nearly as credible as the testimony of plaintiff.

Defendant was confident that he was going to be able to get plaintiff to enter into an agreement with him that would dispose of their marital property. Although plaintiff enunciated clearly to defendant that he would have to discuss it with her attorney and that plaintiff would not otherwise enter into an agreement, defendant felt that plaintiff would give in to him and would enter into an agreement. Defendant purposely ignored the legal proceedings because he was confident that plaintiff would give in to him. Unfortunately, for defendant, plaintiff did not give in to him. The point was reached where defendant had a copy of the divorce hearing officer's report in his possession and defendant still had not been able to prevail upon plaintiff to enter into a settlement with defendant and plaintiff was still unequivocally telling defendant that she was not going to privately enter into an agreement with him. It was at this point that defendant suddenly realized he could no longer ignore the legal proceedings and defendant then suddenly knew or learned enough about the proceedings to file his notice of demand for hearing. It also suddenly "dawned on him" that he needed an attorney.

Defendant's attorney argues that defendant has an absolute right to a de novo hearing before this court. Defendant's attorney cites several cases from trial courts and appellate courts, both federal and state, as authority for that proposition.

In this case we are not dealing with an uneducated, unsophisticated person. Defendant is a high school graduate, has operated several businesses and at the time of the hearing was operating the business claimed by plaintiff to be marital property and also was managing a family business. The business alleged to be marital property is a tavern with a liquor license. Defendant testified the tavern and liquor license were purchased and defendant went through the purchase and transfer of the liquor license without being represented by an attorney. Anyone who can do that without an attorney is a very intelligent person.

Should a person like defendant be permitted to completely ignore legal proceedings and then when he becomes aware that the outcome is not to his liking come in and be successful in requesting a de novo proceeding? We think not.

We think the facts of the cases relied upon by defendant's attorney are at least slightly different than the facts in the cases relied upon by plaintiff. If defendant was an unsophisticated illiterate person with no business experience, we may have arrived at a different conclusion.

Defendant knew what was being scheduled in the divorce proceedings. Defendant deliberately chose to stay away and rely solely on his ability to talk plaintiff into entering into an agreement with him regarding the distribution of marital property. Defendant even stated that at least part of the proceedings are a joke.

Defendant has given no valid reasons or excuses why he did not attend the proceedings before the divorce hearing officer. It is also to be noted that in ignoring these proceedings there is no inventory and appraisement, assets of the parties' marital property, property transferred, or liablities filed by defendant as required by Pa.R.P. 1920.75. These are very important things for a hearing officer or court to have in equitable distribution proceedings.

In the case of *Hepp v. Hepp*, no. 81-7689 which is the law of the forum in this court, the court has stated:

"Plaintiff contends, and we agree, that defendant's failure to participate in the master's hearing is fatal to her cause. Defendant is attempting to circumvent our judicial system. The master's system alleviates much of the case loan (sic) that prior to its inception was borne by the court. Defendant's failure to participate in the hearing makes a mockery of our system.

"If we were to allow a party to ignore the master's system and then permit them to be entitled to a hearing de novo, we would be sounding the death knell for our current system. The master system is set up to allow a just, expedient and inexpensive means of trying cases while at the same time, allowing for judicial review. Here the defendant refused to participate and further delayed the matter. We believe in the axiom that 'justice delayed is justice denied.' Defendant was afforded the opportunity to participate in the trial of her case, yet she felt compelled to do nothing. This court can not and will not allow the circumvention of justice for any purpose.

"We realize that there exists a difference between divorce matters and contract litigation. However, the reasoning of the court in *Howard v. Safeguard*

*Mutual Insurance Co.*, 74 D.&C. 2d 240 (1975), is applicable.

"Judge Greenberg, in discussing a litigant's refusal to participate in an arbitration, held:

'A litigant can not choose to ignore the arbitration hearings on the basis that he has an absolute right of appeal. This would result in a mockery being made of its kind in the country and would make meaningless the requirement that an appeal must be taken in good faith in the firm belief that an injustice has been done.' 74 D.&C.2d 240, 242 (1975).

"We could say the very same things about our master system. It has been very successful in alleviating the backlog in our courts. It has provided litigants an opportunity to resolve their differences and at the same time free-up our court to handle other matters. We are convinced that a litigant can not be allowed to circumvent this system."

Presently before the court we have a litigant who not only knowingly and willingly failed to participate in the proceedings but in addition stated that part of the court proceedings were a joke. As stated in *Hepp*, "We are convinced that a litigant can not be allowed to circumvent . . ." (court procedures), especially one who says that part of our court proceedings are a joke.

Whether the proper procedure for a litigant dissatisfied with the recommendations of the divorce hearing officer is a notice of demand for hearing or exceptions to the hearing officer's report is an issue that need not be decided. Whether one or the other is normally the proper procedure in the case sub judice we find that defendant is not entitled to a hearing de novo before this court.

We therefore make the following

104

## ORDER

And now, this February 3, 1988, it is hereby ordered and decreed:

(1) Defendant's notice of demand for hearing is refused and is hereby dismissed.

(2) Defendant's nunc pro tunc petition for leave of court to file exceptions to hearing officer's report is refused and is hereby dismissed.

(3) The marital dwelling at 18034 Fourth Avenue, Folsom, Pa., is awarded to plaintiff.

(4) All liens against the premises 18034 Fourth Avenue, Folsom, Pa., excepting the first mortgage thereon, are to be paid by defendant.

(5) The Fairview Tavern at 17 South Fairview Road, Crum Lynne, Pa., with its contents and with the Pennsylvania Liquor License issued therefor are awarded to plaintiff.

(6) The contents of the marital home are awarded to plaintiff.

(7) A certain 1968 Alpine Tiger automobile is awarded to plaintiff.

(8) The Last Stand Sandwich Shop and What's Cooking Restaurant with their furnishings, equipment and contents are awarded to defendant.

(9) A certain $125,000 note due from Milton Calef is awarded to defendant.

(10) Alimony in the amount of $200 each week is awarded to plaintiff from defendant, to continue so long as plaintiff's income does not exceed $30,000 annually, and so long as the first mortgage against premises 18034 Fourth Avenue, Folsom, Pa., remains outstanding and unpaid in full provided that all other liens which now appear of record against said premises have been lawfully paid and satisfied of record.

(11) Defendant is directed to pay counsel for plaintiff counsel fees in the amount of $4,293.65.